IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

KEVIN MOSS,                              )
                                         )
      Plaintiff,                         )
                                         )
                                         )    CIV-09-1266-HE
v.                                       )
                                         )
MICHAEL J. ASTRUE,                       )
  Commissioner of Social Security        )
   Administration,                       )
                                         )
      Defendant.                         )

## REPORT AND RECOMMENDATION

      Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying his concurrent applications for disability insurance and supplemental security income benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1382. Defendant has answered the Complaint and filed the administrative record (hereinafter TR___), and the parties have briefed the issues. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following reasons, it is recommended that the Commissioner's decision be reversed and remanded for further administrative proceedings.

1

I. Background

On March 15, 2005 (protective filing date), Plaintiff filed his applications for benefits and alleged that he became disabled on December 15, 2003. (TR 37, 141-143). Plaintiff alleged he was disabled as a result of depression, panic attacks, anxiety, and degenerative disk disease in his back. (TR 156). Plaintiff previously worked for many years as a bridge construction superintendent, but he stopped working in December 2003. (TR 149, 157 394, 419). Plaintiff's application was denied initially and on reconsideration. (TR 47, 48). At Plaintiff's request, a hearing *de novo* was conducted before Administrative Law Judge Kirkpatrick ("ALJ") on October 23, 2007. (TR 388-412). At the hearing, Plaintiff appeared with counsel and testified he was 39 years old, lived with his wife, and had obtained a general equivalency degree. Plaintiff stated that he stopped working in 2003 because his job was too stressful and his former wife divorced him. Plaintiff testified he was disabled because he could not be around people and he had panic attacks, racing thoughts, and depression. Plaintiff stated that he was being treated at a mental health clinic where he was attending therapy sessions twice a week and was prescribed medications.

A vocational expert ("VE") testified that Plaintiff's previous work as an operating engineer or assistant construction superintendent was skilled work performed at the heavy exertional level, as Plaintiff described the position. The VE responded to hypothetical questioning by the ALJ concerning the availability of jobs for an individual with a particular residual functional capacity ("RFC") for work. The ALJ issued an unfavorable decision on March 17, 2008. (TR 37-46). Plaintiff's request for review of the decision was granted by

the Appeals Council, and the Appeals Council reversed the ALJ's decision and remanded for further proceedings. (TR 30-33, 87).

A second hearing was conducted on April 15, 2009. (TR 413-427). At this hearing, Plaintiff testified that he had not worked since the previous hearing. Plaintiff further testified that he could not work because of depression and inability to concentrate. Concerning his usual daily activities, Plaintiff testified that he stayed home, either sitting or staying in bed, watched television, walked around outside his home, did not drive very often, and occasionally performed household maintenance chores such as vacuuming and dishwashing. He testified that he was undergoing therapy once a week but that he had missed some counseling appointments. Plaintiff stated that he did not attend counseling appointments when he did not feel good and did not want to be around people.

The ALJ issued a decision in which the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act (TR 15-25), and the Appeals Council declined to review this decision. (TR 6-8). Plaintiff now seeks judicial review of the final decision of the Commissioner embodied in the ALJ's determination.

II. Standard of Review

Judicial review of this action is limited to determining whether the Commissioner's decision is based upon substantial evidence and whether the correct legal standards were applied. Emory v. Sullivan, 936 F.2d 1092, 1093 (10th Cir. 1991). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992). Because "all the

ALJ's required findings must be supported by substantial evidence," Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999), the ALJ must "discuss[ ] the evidence supporting [the] decision" and must also "discuss the uncontroverted evidence [the ALJ] chooses not to rely upon, as well as significantly probative evidence [the ALJ] rejects." Clifton v. Chater, 79 F.3d 1007, 1010 (10th Cir. 1996). The court may not reweigh the evidence or substitute its judgment for that of the Commissioner. Hamilton v. Secretary of Health & Human Servs., 961 F.2d 1495, 1498 (10th Cir. 1992). However, the court must "meticulously examine the record" in order to determine whether the evidence in support of the Commissioner's decision is substantial, "taking into account whatever in the record fairly detracts from its weight." Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004)(internal quotation omitted).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i), 1382c(a)(3)(A). The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. See 20 C.F.R. §§ 404.1520(b)-(f), 416.920(b)-(f) (2010); see also Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005)(describing five steps in detail). Where a *prima facie* showing is made that the plaintiff has one or more severe impairments and can no longer engage in prior work activity, "the burden of proof shifts to the Commissioner at step five to show that the claimant retains sufficient residual functional capacity (RFC) to perform work in the

4

national economy, given [the claimant's] age, education, and work experience." Grogan, 399 F.3d at 1261; accord, Channel v. Heckler, 747 F.2d 577, 579 (10th Cir. 1984).

III. Medical Record

The record shows that Plaintiff sought mental health treatment on three occasions at Oklahoma County Crisis Intervention Center in March and April 2005. Plaintiff reported that he had been suicidal over the previous few months, he was depressed and anxious and experiencing panic attacks, he had been divorced for five months, and his former wife had filed a criminal charge against him for assault and battery with a dangerous weapon. (TR 215). Plaintiff further reported that his former wife was not allowing him to see his four children, he had lost his job, and he had difficulty sleeping, a reduced appetite, no income, and lived in a relative's rental property. (TR 215). The evaluating physician noted Plaintiff exhibited a blunt affect and depressed mood, and the diagnosis was major depression, recurrent. (TR 218-219). Plaintiff was prescribed anti-depressant medication and advised to seek treatment at HOPE Community Services ("HOPE"). (TR 217).

Plaintiff underwent an initial psychiatric evaluation conducted by Dr. Al-Khouri at HOPE in May 2005. Dr. Al-Khouri noted that Plaintiff described a history of depression, racing thoughts, loss of concentration, sleeping difficulty, fatigue, paranoia, and panic attacks. (TR 294). In a mental status evaluation, Dr. Al-Khouri noted Plaintiff was oriented and exhibited intact memory, restricted affect, irritable and depressed mood, clear speech, and some anxiety. The diagnostic impression was bipolar I disorder, most recent episode depressed, with psychotic features and polysubstance abuse in sustained full remission since

2000. (TR 294). Dr. Al-Khouri's diagnosis included an axis V global assessment of functioning ("GAF") score[1] of 45[2], and the psychiatrist prescribed mood stabilizer, anti-depressant, and sleeping aid medications for Plaintiff. Plaintiff did not return for an August 2005 appointment but did attend an October 2005 appointment in which Plaintiff reported he was taking his medications. At that time, Dr. Al-Khouri noted Plaintiff exhibited dysphoric mood, anxiety, irritability, and constricted affect. The dosage of Plaintiff's mood stabilizer medications was increased, and Plaintiff was advised to continue the anti-depressant and sleeping aid medications. (TR 292). Plaintiff did not return for a scheduled January 2006 appointment.

Plaintiff sought treatment at the Mental Health and Substance Abuse Centers of Southern Oklahoma ("MHSSO") in November 2005, and he reported that he had recently moved to Pauls Valley, Oklahoma, where MHSSO was located. (TR 273). In a psychiatric assessment at MHSSO conducted in December 2005, Plaintiff stated he had been out of his medications for three weeks. (TR 273). In a mental status examination, Dr. Yeh, the

---

[1] The diagnosis of mental impairments "requires a multiaxial evaluation" in which Axis I "refers to the individual's primary clinical disorders that will be the foci of treatment" and Axis V "refers to the clinician's assessment of an individual's level of functioning, often by using a Global Assessment of Functioning (GAF), which does not include physical limitations." Schwarz v. Barnhart, No. 02-6158, 2003 WL 21662103, at *3 fn. 1 (10th Cir. July 16, 2003)(unpublished op.)(citing the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (4th ed. 1994), at 25-32).

[2] "A GAF score of 41-50 indicates '[s]erious symptoms . . . [or] serious impairment in social, occupational, or school functioning,' such as inability to keep a job.'" Langley v. Barnhart, 373 F.3d 1116, 1122 n. 3 (10th Cir. 2004)(quoting Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000)("DSM IV-TR"), at 34).

examining psychiatrist, noted that Plaintiff exhibited very depressed mood and affect, very poor eye contact, and he had a disheveled appearance. (TR 273). Dr. Yeh noted Plaintiff reported very poor sleep of about two to three hours per night, increased irritability, and mood swings. (TR 273). The diagnostic impression was major depressive disorder, recurrent, moderate, mood disorder not otherwise specified, and history of alcohol dependence. (TR 273). Dr. Yeh's diagnosis included an Axis V GAF score of 50. (TR 273). The medications previously prescribed by Dr. Al-Khouri were continued. (TR 274). Plaintiff's mood stabilizer medications were increased in January 2006. (TR 268-269). Plaintiff did not show up for scheduled medication management appointments with Dr. Yeh in February and April 2006. (TR 266, 267).

Plaintiff saw a case manager/counselor and completed a treatment plan at MHSSO in March 2006. (TR 265, 322-323). The case manager/counselor noted Plaintiff had not worked since 2002 due to his depression and anxiety and that he was seeking disability benefits and relied on his wife for financial support. (TR 323). Plaintiff also reported that when he took his medications he slept "all the time," when he did not take his medications he did not sleep, and he experienced anxiety attacks and daily depression with mood swings and irritability. (TR 322). Plaintiff saw a case manager in May and August 2006, but did not return for scheduled treatment and was discharged in January 2007. (TR 340).

Plaintiff again sought treatment at MHSSO in April 2007 (TR 339). The case manager/counselor who performed an assessment and mental status examination of Plaintiff noted a diagnosis of bipolar disorder and an Axis V GAF score of 45. (TR 310, 321).

7

Plaintiff stated to his case manager/counselor in May 2007 that he was compliant with his medications and still depressed. (TR 337). His case manager/counselor noted in May 2007 that Plaintiff was unable to work due to his illness. (TR 313, 321). In May and June 2007, Plaintiff continued to state that he was depressed, had difficulty sleeping and leaving the house, experienced panic attacks, and was easily angered. (TR 333-336). Plaintiff attended case management/counseling sessions at MHSSO in June and July 2007. (TR 324-333). In a letter authored by the MHSSO case manager/counselor and dated October 22, 2007, the case manager/counselor reported that Plaintiff was an active client of the facility and had attended medication clinics, individual rehabilitation, and group therapy appointments as scheduled. (TR 302).

Following the remand, Plaintiff underwent a consultative psychological examination conducted by Dr. Krimsky in October 2008. Dr. Krimsky provided a report of his evaluation of Plaintiff (TR 342-344) and a medical source statement of Plaintiff's ability to perform mental work-related activities (TR 345-347). In a mental status examination, Dr. Krimsky noted that Plaintiff was "a highly troubled individual, depressed and anxious," who exhibited weak memory function, poor efficiency and concentration, and "marked social avoidance." Dr. Krimsky reported that Plaintiff had "no insight" concerning his mental impairments and his episode of decompensation when he stopped working, and that Plaintiff also lacked "[j]udgment concerning social matters." (TR 342-343). In a diagnostic assessment, Dr. Krimsky stated that Plaintiff had a depressive disorder and possibly a panic attack disorder. (TR 343). Dr. Krimsky equivocated concerning Plaintiff's Axis V GAF score, which he

expressed as "GAF 60?." (TR 343). In the medical source statement, the psychologist opined that Plaintiff was not limited by a mental impairment with respect to his ability to understand, remember, and carry out simple instructions, was moderately limited in his ability to make judgments on simple work-related decision, and was extremely limited in his ability to understand, remember, carry out, and make judgments concerning complex job instructions. (TR 345). Dr. Krimsky further opined that Plaintiff was markedly limited in his ability to interact appropriately with the public, supervisors, and coworkers, and was moderately to markedly limited in his ability to respond appropriately to usual work situations and to changes in a routine work setting. (TR 346).

In reports completed by his treating MHSSO case manager/counselor in December 2007 and June 2008, the case manager/counselor noted that Plaintiff "continue[d] to be unable to work due to his disability," that Plaintiff was diagnosed with bipolar disorder, and that Plaintiff was assessed with a GAF score of 45. (TR 348, 351, 357, 359-360).

In August 2008, Plaintiff sought treatment from an osteopathic family physician, Dr. Allee, who prescribed anti-anxiety and anti-depressant medication.[3] (TR 379-381). Plaintiff described a 25 to 30 year history of depression and anxiety. Plaintiff reported that he experienced anxiety attacks even when entering a retail store and that he was being treated at a mental health clinic. He reported that he had worked as a bridge superintendent but began having problems with anxiety and depression and lost his job, his marriage, and his

---

[3]The ALJ erroneously described Dr. Allee as a "mental health provider." (TR 21).

children. Plaintiff reported he had not used drugs and alcohol since 2000 and that anxiety prevented him from working. Dr. Allee's diagnostic assessment was bipolar disorder, significant anxiety and panic attacks, and remote history of drug and alcohol abuse. (TR 379-381). Dr. Allee prescribed anxiolytic medication. (TR 380). In a follow-up visit in August 2008, Plaintiff reported that the anti-anxiety medication was helpful. (TR 381).

In a report completed by a MHSSO clinician in January 2009 seeking medicaid reimbursement for treatment of Plaintiff, the clinician noted the following historical information:

> Kevin began having depressive symptoms many years ago. He felt he was successful at work and was financial[ly] independent. He began using drugs and lost his employment followed by divorce and separation from his children. He continues to have an ongoing disability case and a child support case. His wife recently left and his symptoms have worsened. He has received services [at MHSSO] since 2005 for his illness.

(TR 368). At that time, Plaintiff was reportedly taking medications for anxiety, depression, and sleep. (TR 369). The clinician stated Plaintiff had no social interaction, did not attend church, and was "unable to work due to disability." (TR 370). The clinician further stated Plaintiff was not making progress toward decreasing his depression or anxiety. (TR 373-374).

IV. The ALJ's Evaluation of Doctors' Opinions

Plaintiff contends that the ALJ improperly discounted the opinion of the consultative psychological examiner, Dr. Krimsky. As reasons given by the Appeals Council for rejecting the ALJ's first decision, the Appeals Council stated that the record did not contain a medical

10

source statement from a mental health professional concerning Plaintiff's ability to perform work-related activities despite his severe mental impairments. The Appeals Council also noted an internal conflict in the findings of a consultative non-examining mental health professional, Dr. Goodrich, who provided the agency with a medical source statement and a completed psychiatric review technique ("PRT") form dated October 19, 2005, concerning Plaintiff's mental RFC for work. The Appeals Council faulted the ALJ for relying on Dr. Goodrich's medical source statement and completed PRT form. (TR 32). The Appeals Council further found it was "unclear whether the assessed moderate limitation in concentration, persistence or pace [was] sufficiently addressed in the [RFC] or in the hypothetical questions to the [VE]." (TR 32). The Appeals Council also faulted the ALJ for failing to consider Plaintiff's treatment records at MHSSO which "cover[ed] the period through August 2007" and "indicate[d] that the claimant [was] still experiencing difficulties as a result of his mental condition despite individual therapy and changes in his medication . . . ." (TR 32). To cure these errors, the ALJ was directed to, in part, "[o]btain additional evidence concerning the claimant's mental impairments in order to complete the administrative record," including "a consultative mental status examination and medical source statements about what the claimant can still do despite the impairments." (TR 32).

Following the remand, Plaintiff underwent the consultative psychological examination conducted by Dr. Krimsky in October 2008. As summarized above, Dr. Krimsky provided both a report of his evaluation of Plaintiff, which included a mental status examination and diagnostic assessment, and a medical source statement. (TR 342-347). Dr. Krimsky's report

11

and medical source statement identify severe limitations in Plaintiff's mental functioning and mental RFC for work that were largely ignored by the ALJ without discussion.

In the ALJ's decision, the ALJ pointed to Dr. Krimsky's finding in his report that Plaintiff exhibited "weak" memory based on a mental status examination, but the ALJ considered this finding inconsistent with Dr. Krimsky's statement that Plaintiff was able to recall his medications.[4] The ALJ may not substitute his judgment for that of a medical professional. Winfrey v. Chater, 92 F.3d 1017, 1022 (10th Cir. 1996). With respect to Dr. Krimsky's diagnostic assessment, the ALJ found that Dr. Krimsky's "noted GAF of 60 reflects an opinion by the examining psychologist that employment was not foreclosed." (TR 22). The ALJ did not mention Dr. Krimsky's obvious equivocation in assessing Plaintiff's functional level. Nor did the ALJ discuss other significant evidence in the medical record reflecting that Plaintiff's treating mental health professionals assessed Plaintiff with GAF scores indicating disability. (TR 218, 273, 294, 298, 310, 321, 323, 348, 357, 368). These low GAF scores spanned four years of the relevant time period, well beyond the 12-month period necessary for a determination of disability.

The ALJ also pointed to Dr. Krimsky's report that Plaintiff had a "history of assaultive behavior (but this appears to have been in the remote past . . .)," and the ALJ noted that Dr. Krimsky had "opined that claimant would likely have interpersonal difficulties." (TR 22). This is the extent of the ALJ's discussion of Dr. Krimsky's report and RFC statement. The

---

[4]The ALJ also caustically noted that Plaintiff "was only 35 when he last worked" although Plaintiff reported to Dr. Krimsky he had worked "all his life." (TR 21-22).

12

ALJ's brief discussion of Dr. Krimsky's report and RFC assessment ignores relevant findings made by Dr. Krimsky concerning Plaintiff's ability to perform mental work-related activities. The ALJ incorporated only some of the consultative mental health specialist's RFC findings. The ALJ adopted the findings that Plaintiff was capable of understanding, remembering, and carrying out simple job instructions and that Plaintiff was not able to interact with the general public. However, the ALJ ignored or rejected without explanation Dr. Krimsky's RFC assessment regarding Plaintiff's ability to make judgments concerning simple work-related decisions, ability to respond appropriately to usual work situations and to changes in a routine work setting, and Plaintiff's social functioning ability with respect to supervisors and coworkers. In his decision, the ALJ merely noted that he "agreed" with the RFC assessment by Dr. Goodrich without providing legally sufficient reasons for doing so.

The regulations define "medical opinions" as:

> statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions.

20 C.F.R. §§ 404.1527(a), 416.927(a). An ALJ is required to "consider the medical opinions in [a claimant's] case record together with the rest of the relevant evidence" in the record. 20 C.F.R. §§ 404.1527(b), 416.927(b).

An ALJ must also consider the findings of non-examining state agency medical and psychological consultants as opinion evidence. 20 C.F.R. §§ 404.1527(f)(2), 416.927(f)(2).

13

However, when considering medical opinions the opinion of a non-examining consultative physician is generally entitled to the least weight. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004). Dr. Goodrich did not examine Plaintiff and therefore her opinion was not entitled to as much weight as that of the treating and consultative physicians. See Winfrey v. Chater, 92 F.3d 1017, 1022 (10th Cir. 1996). Dr. Goodrich noted that the PRT form and mental RFC assessment covered only the period from December 15, 2003 until October 19, 2005. Thus, Dr. Goodrich obviously had not considered Plaintiff's extensive mental health treatment records for the time period beyond October 2005. Moreover, the Appeals Council had previously warned the ALJ that Dr. Goodrich's report was internally inconsistent. Dr. Goodrich opined that Plaintiff was not significantly limited in his ability to maintain attention and concentration and was also moderately limited in his ability to maintain concentration, persistence or pace. (TR 248, 252).

The ALJ erred in evaluating the report and medical source statement of the consultative psychological examiner, Dr. Krimsky. The ALJ also erred in relying on the functional limitations set forth in Dr. Goodrich's medical source statement in establishing Plaintiff's mental RFC for work when that medical source statement included findings that conflicted with the findings of Dr. Krimsky, who examined the Plaintiff, was not based on a review of the majority of the medical record, and was internally inconsistent, as pointed out by the Appeals Council.

Moreover, the functional limitations as found by Dr. Goodrich are not supported by the record. Dr. Goodrich found that Plaintiff had no episodes of decompensation. (TR 248).

Dr. Krimsky found, and this finding is supported by the record, that Plaintiff had experienced an episode of decompensation when he stopped working in 2003. Dr. Goodrich also found that Plaintiff was markedly limited only in his ability to deal with the general public but that Plaintiff was not significantly limited in his ability to respond appropriately in work-related situation, get along with supervisors, coworkers or peers, or maintain socially appropriate behavior. (TR 253). Dr. Krimsky opined that Plaintiff was markedly limited in his ability to interact appropriately with the public, supervisors, and coworkers, that Plaintiff was moderately limited in his ability to make judgments on simple work-related decision, and that Plaintiff was moderately to markedly limited in his ability to respond appropriately to usual work situations and to changes in a routine work setting. (TR 343, 345-346). The mental RFC findings made by Dr. Krimsky are critical. Social Security Ruling 85-15 provides that

> The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine setting. A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base. This, in turn, would justify a finding of disability because even favorable age, education, or work experience will not offset such a severely limited occupational base.

Social Security Ruling 85-15, "Titles II and XVI: Capability to Do Other Work - The Medical-Vocational Rules as a Framework for Evaluating Solely Nonexertional Impairments," 1985 WL 56857, * 4 (1985). The errors in the ALJ's evaluation of the medical record warrant reversal of the Commissioner's decision and a remand for further

administrative proceedings to correct these significant errors.

V. Credibility

In a second and final argument, Plaintiff contends that the ALJ's credibility determination was flawed. The ALJ noted at several points in the decision that Plaintiff had provided an inconsistent history when seeking mental health treatment. In summarizing the Plaintiff's treatment records at Hope Community Services, Inc. ("Hope"), the ALJ noted that Plaintiff was briefly treated by Dr. Al-Khouri. The ALJ noted that Plaintiff was seen by Dr. Al-Khouri only twice, that Dr. Al-Khouri prescribed medications in May 2005, and that Plaintiff returned for medication management in October 2005. The ALJ noted "[t]he reasonable inference is that claimant was doing well." (TR 20). The record does not support this "reasonable inference" where the record shows that Plaintiff continued to seek mental health treatment at another facility in November 2005 and continued to seek mental health treatment, albeit somewhat erratically, in the succeeding years covered by the decision.

The ALJ noted that Plaintiff provided a "variant history of his difficulties" to Dr. Allee, a treating mental health specialist, and to the consultative psychological examiner, Dr. Krimsky, which the ALJ summarized as "depression/'anxiety as precipitant factor of substance abuse." (TR 21). The ALJ found that Plaintiff's "explanation . . . is exactly the opposite of the progressive history he provided his treatment sources at [MHSSO], and it is not considered reliable." (TR 21). The ALJ also relied on Plaintiff's noncompliance with followup treatment as reason for discounting Plaintiff's credibility.

To support the credibility determination, the ALJ referred to a Treatment Plan/Review

16

report authored by a clinician at MHSSO on June 11, 2008. In this report, Plaintiff gave a history of pervious employment "as a supervisor with a construction co. He became involved with drug and alcohol abuse including use of meth [sic] and marijuana. Due to his drug and alcohol use he began having relationship problems at home. He and his wife divorced and he lost his employment." (TR 348). This same history was noted in a report completed by the same clinician at MHSSO in December 2007. (TR 357). The ALJ failed to consider whether any inconsistencies in Plaintiff's explanation of his long-term depression, bipolar disorder, and anxiety history could be due to his mental impairments. Dr. Krimsky addressed this same issue in his report in which the psychologist noted that Plaintiff had "no insight" concerning the cause of his depression or his decompensation episode when he stopped working. (TR 343). Plaintiff's failure to attend some therapy sessions and followup mental health treatment also does not provide sufficient justification for discounting Plaintiff's credibility. "Courts considering whether a good reason supports a claimant's failure to comply with prescribed treatment have recognized psychological and emotional difficulties may deprive a claimant of 'the rationality to decide whether to continue treatment or medication.'" Pates-Fires v. Astrue, 564 F.3d 935, 945-946 (8th Cir. 2009)(quoting Zeitz v. Sec'y of Health and Human Servs., 726 F. Supp. 343, 349 (D.Mass 1989). Plaintiff has been repeatedly diagnosed with bipolar disorder. (TR 294, 310, 312, 368, 379). Bipolar disorder is an impairment that often results in noncompliance with treatment. See Reals v. Astrue, No. 08-CV-3063, 2010 WL 654337, at *2 (W.D.Ark. Feb. 19, 2010)("According to the DSM, patients suffering from . . . bipolar disorder also suffer from . . . poor insight . . .

17

predispos[ing] the individual to noncompliance with treatment . . . ."). Additionally, "many [bipolar] patients do not respond well to treatment, or have frequent relapses." Bauer v. Astrue, 532 F.3d 606, 607 (7th Cir. 2008). Dr. Krimsky found that Plaintiff exhibited no insight, poor judgment, and marked social avoidance. At his supplemental hearing, Plaintiff testified that he missed therapy sessions when he felt bad and did not want to be around people. (TR 422). This testimony is consistent with the RFC findings made by Dr. Krimsky that Plaintiff was markedly limited in his ability to work with the public, supervisors and coworkers or handle changes in work routines.[5] The medical evidence reflects that Plaintiff sought mental health treatment erratically, to be sure, but the ALJ failed to consider the nature, severity, and effects of Plaintiff's mental impairments in reaching the credibility determination. This critical error in the ALJ's decision warrants reversal and remand for further administrative proceedings consistent with this Report and Recommendation.

RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter

---

[5]Plaintiff argues that Dr. Krimsky's mental RFC findings should be evaluated under a policy guideline set forth in the Social Security Administration's Program Operations Manual System ("POMS"), POMS No. DI 25020.010(A)(3). The POMS consists of a set of policies issued by the agency "to be used in processing claims." McNamar v. Apfel, 172 F.3d 764, 766 (10th Cir. 1999). According to Plaintiff, this provision states that a substantial loss of a claimant's ability to meet certain basic mental demands, including "respond appropriately to supervision, coworkers and work situations; and deal with changes in a routine work setting," is a loss that "severely limits the potential occupational base and thus, would justify a finding of inability to perform other work even for persons with favorable age, education and work experience." POMS No. DI 25020.010(A)(3). Because this POMS tracks Social Security Ruling ("SSR") 85-15, and SSR 85-15 has been addressed herein as it applies to this case, the undersigned will not address this separate argument.

REVERSING the decision of the Commissioner to deny Plaintiff's applications for benefits and REMANDING the case for further administrative proceedings. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before     September 29th    , 2010, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this    9th    day of    September    , 2010.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE